IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON MURRAY                          :
                                      :        CIVIL ACTION
                                      :
                                      :
        v.                            :
                                      :        NO.   24-273
VERIZON WIRELESS, LLC                 :


## OPINION

### I.    Introduction

As framed by Plaintiff Devon Murray ("Plaintiff"), this case presents the Court

with a difficult societal question about who should be allowed to say which words in

a workplace. But to answer that question would require this Court to appoint itself

as a "super-personnel department" with *de novo* review of individual hiring and firing

decisions, which the Third Circuit has expressly forbidden. *See Brewer v. Quaker

State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995). This Court cannot —and should

not—sit as arbiter of acceptable workplace language where the language is the

Plaintiff's own language, rather than language targeted at him, and such language is

not protected activity.

Rather than hard questions of fact, this case presents only easy questions of

law. Plaintiff, throughout his briefing on both his affirmative partial motion for

summary judgment (Dkt. #31) and opposition to Defendant Cellco Partnership d/b/a

Verizon Wireless's ("Defendant") motion for summary judgment (Dkt. #34)

misapprehends the basic building blocks of employment discrimination litigation and

comes woefully short of the sort of evidence which could sustain his claim past summary judgment. For the reasons to be explained below, this Court will enter summary judgment in favor of Defendant on all counts.

## II.    Factual Background

Plaintiff Devon Murray is an African American male who has worked for various Verizon stores since September 2017. (Dkt. #33 at ¶¶ 2-3). Plaintiff worked at the Verizon store from which this claim arose from 2021 until his termination in July 2023. (*Id.* at ¶ 5). On June 1, 2023, after an apparently frustrating but fairly innocuous conversation with a co-worker, Plaintiff walked towards the front doors of the store and commented under his breath, using the "n-word" twice. (*Id.* at ¶ 9). The employee with whom he was arguing is a white male, and did not use the "n-word" himself. (*Id.* at ¶¶ 8, 10). An African American co-worker reported this to Brittany LaRusso, Defendant's Human Resources Business Partner, as did Plaintiff, himself. (*Id.* at ¶¶ 12-13). Defendant conducted an investigation which consisted of multiple interviews, including two in which Plaintiff admitted he used the "n-word" twice at work. (*Id.* at ¶¶ 14-18, 21). Plaintiff was notified that his employment was terminated as of July 12, 2023, effective that day, and that the reason for his termination was the use of the "n-word" at work. (*Id.* at ¶ 25).

No other incidents of an employee using the "n-word" have occurred at the Verizon store in question or any Verizon store in which Plaintiff worked from August 2021 through November 2024. (*Id.* at ¶ 26). Data exchanged in discovery in this case shows that thirteen employees for Defendant were terminated for confirmed use of

the "n-word." (*Id.* at ¶ 27). Of those employees, four identified as Hispanic/Latino, five identified as Black or African American, one identified as Asian, two identified as white, and one did not identify a racial group. (*Id.* at ¶ 27). Three additional employees had substantiated uses of the "n-word" during that same timeframe, but received final written warnings, rather than termination. (*Id.* at ¶ 28). All three of those employees were African American, the same protected class upon which Plaintiff rests his discrimination claims here. (*Id.*).

Plaintiff filed his Complaint in this case (the "Complaint" at Dkt. #1, Ex. A) in the Philadelphia County Court of Common Pleas on December 28, 2023. On January 19, 2024, Defendant timely removed this action to this Court based on both federal question and diversity jurisdiction. (Dkt. #1). In his Complaint, Plaintiff first brings a count for violation of the Pennsylvania Human Relations Act ("PHRA"). The Complaint does not (as complaints filed by seasoned employment plaintiffs' lawyers typically do) label the PHRA count to explain under which theory or theories of PHRA liability Plaintiff is proceeding.[1] The Complaint does allege that "Verizon terminated Plaintiff as a result of Plaintiff's race, ethnicity and cultural folkways and/or mores[]" and that Verizon's termination of Plaintiff was "retaliatory in nature . . . ." (Complaint at ¶¶ 73-74). The Complaint does not plead any specific protected activity or activities on which his retaliation claims rest.

Plaintiff also brings a count for violation of 42 U.S.C. § 2000(e)(2)("Title VII,"). This count similarly fails to identify the theory under which this count is proceeding.

---

[1]    For example: disparate treatment, hostile work environment, or disparate impact.

Again, this portion of the Complaint states that Plaintiff was terminated "as a result of Plaintiff's race and/or color and cultural folkways and mores[]" and that his termination was "retaliatory in nature . . . ." This count also fails to allege any protected activities.

Finally, Plaintiff brings a count for wrongful termination. This count alleges that Defendant fired Plaintiff "without cause since there was no violation of any published employment policy" and that doing so breached an employment agreement with Plaintiff. (*Id.* at ¶ 94).

Importantly, the Complaint does not allege any facts which could support a claim (even an implicit one) for an adverse impact claim under either statute. Further, despite references in the wrongful termination section, Plaintiff alleges no facts from which a factfinder could plausibly infer the relationship between the Parties was a contractual one, rather than employment at will.

## III.    Legal Standards

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving under Rule 56 "bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820-821 (3d Cir. 2006) (citations and internal quotation omitted).

The movant's initial burden does not relieve complainant's obligation of producing evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

Claims based upon discrimination under Title VII and the PHRA are essentially identical, requiring the same proofs and including the same burden shifting, and therefore are analyzed together. *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 919-20 (3d Cir. 1997). To make a *prima facie* case for disparate treatment

under those statutes, a plaintiff must be able to prove: "(1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the action occurred under circumstances that raise an inference of unlawful discrimination." *Anderson v. Mercer Cty. Sheriff Dep't*, 815 F. App'x 664, 666 (3d Cir. 2020).

To prevail on a claim for unlawful retaliation under those statutes, a plaintiff must prove: (1) they engaged in conduct that was protected under the relevant statutory provision; (2) the employer took a materially adverse action or a series of materially adverse actions against them; and (3) there was a causal relationship between the protected conduct and the employer's materially adverse response or responses to that conduct. *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997).

Finally, absent a contract to the contrary, employment in Pennsylvania is at will, meaning "[g]enerally, an employer may discharge an employee with or without cause, at pleasure . . . ." *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998) (cleaned up). Despite this default rule, "courts have forbidden the firing of at-will employees when doing so would offend Pennsylvania's public policy." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003). This exception is construed narrowly. *Id.*

## IV.    Analysis

### a.    Plaintiff has no evidence which suggests that his termination was the result of his race or ethnicity, and therefore he cannot prove his *prima facie* case for disparate treatment under either Title VII or the PHRA.

The Court will first consider whether Plaintiff has produced enough evidence to create a genuine issue of material fact to support a claim for disparate treatment. *Inter alia*, in order to prevail on such a claim, Plaintiff must show that his termination occurred "under circumstances that raise an inference of unlawful discrimination." *Anderson*, 815 F. App'x at 666. Plaintiff cannot do so.

The undisputed and stipulated facts are that Plaintiff did indeed use the "n-word" at work and that was the reason he was terminated. Plaintiff cites to no evidence that any of the decisionmakers involved in his termination made racists comments, treated employees of one race better than another, or otherwise harbored any prejudiced beliefs.

Plaintiff's main argument seems to be that the term "racial slur" as referenced in Defendant's employee handbook is ambiguous. That may be true. But it is not relevant here. The handbook upon which Plaintiff seems to hang his entire case has a dispositive provision which he ignores, and which says:

> Except where applicable law provides otherwise, employment with Verizon is "at will," which means that you or Verizon may terminate your employment, at any time, with or without cause, with or without notice, for any reason not prohibited by law, unless governed by a collective bargaining agreement or specific contract of employment. Any at will employment relationship may not be modified except in a written agreement signed by an authorized Verizon officer.

(Dkt. #34-2 at p. 6). Because Plaintiff's employment is at will, even if there was some ambiguity in the handbook regarding the definition or use of a racial slur, Plaintiff must bring to this Court additional evidence which supports an inference that the alleged deviation from policy—if proven—was the result of discriminatory animus rather than happenstance, accident, or even personal animus unrelated to Plaintiff's protected class. "'[The] mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decisions were pretextual.'" *Carroll v. Guardant Health, Inc.*, 511 F. Supp. 3d 623, 646 (E.D. Pa. 2021) (Kearney, J.) (quoting *Maull v. Div. of State Police*, 39 F. App'x 769, 774 (3d Cir. 2002)) (citation omitted); *see also Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir. 1995) (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir. 1994)) (same).[2] This means Plaintiff needs to do much more than

[2]    *See also: Edwards v. Hiland Roberts Dairy, Co.,* 860 F.3d 1121, 1127 (8th Cir. 2017) (noting that a deviation from policy is not enough to support an inference of discrimination on the part of an employer "without additional evidence of pretext."); *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (noting that selective enforcement of a workplace policy is "without more . . . not prohibited by Title VII."); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) ( "A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.") (internal quotations omitted); *Marrero v. Camden Cnty. Bd. of Soc. Servs.,* 164 F. Supp. 2d 455, 477 (D.N.J. 2001) (applying New Jersey Law Against Discrimination, and holding that "[w]hile an employer certainly may not treat women less favorably than men through its dress policies, and while the selective enforcement of such policies against a single employee may be unlawful in certain cases (such as where retaliation is involved), the mere fact that an employer's policy is enforced against a single female employee does not, without more evidence of causation than has been shown here, create a genuine issue of material fact sufficient to survive summary judgment."); *Amimi v. Whole Foods Markets*, 651 F. Supp. 3d 376, 386 (D. Mass. 2023) (holding deviations from internal policies alone are insufficient to show that an employee was treated unfairly); *Kidd v. MBNA Am. Bank, N.A.*, 93 Fed. Appx. 399, 401 (3d. Cir 2004) (affirming summary judgment in favor of an employer and finding that the employer's mistake in forgetting to check the qualification status of the promoted employee was a legitimate nondiscriminatory business reason); *E.E.O.C. v. Brown Printing Co.,* 752 F. Supp. 687, 689 (E.D. Pa. 1990) (*quoting Keyes v. Sec'y of the Navy*, 853 F.2d

merely create a genuine issue of material fact regarding whether Defendant violated its own handbook when it fired him for using the "n-word." Rather, he must show that such violation was based upon racial or ethnic animus for African American employees.

Plaintiff attempts to prop up his claim by way of a reference to potential comparator employees. Comparator employees most commonly arise during the "pretext" phase of the case, though this Court cannot see a reason why they would not also be usable to prove the existence of circumstances which give rise to an inference of discrimination in the *prima facie* case. In this context, comparator employees are employees who are **outside the protected class** of the plaintiff who were treated more favorably than the plaintiff. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 645 (3d Cir. 1998). Besides that crucial difference in protected class, the comparator employee "must be similarly situated in all relevant respects." *Wilcher v. Postmaster Gen.,* 441 F. App'x 879, 882 (3d Cir. 2011).

Here, the only similarly-situated employees Plaintiff can argue were treated better are the three African American employees who were warned rather than fired, all of whom are within Plaintiff's own protected class. *See supra*. For that reason, Plaintiff has no success by way of comparator employees, either as to his *prima facie* case or a pretext analysis.[3] Plaintiff later argues that the existence of the three

---

1016, 1026 (1st Cir. 1988)) ("Any number of poor decisions by the employer can be shown without meeting the burden of showing discriminatory intent. . . . [E]rrors in judgment are not the stuff of Title VII transgression—so long as the 'mistakes' are not a coverup for invidious discrimination." (cleaned up)).

[3]    Plaintiff, in a footnote, states that there are potentially additional comparator employees which were not identified in an allegedly-deficient document production by Defendant. That is neither

African American employees who were not terminated for using the "n-word" proves that Defendant does not treat all employees the same. That may well be true, but it is of no moment here. Title VII does not require an employer to treat all its employees the exact same way. Rather, it only demands that any differences in treatment not be based upon a protected attribute.

Plaintiff argues vociferously for several pages that the lack of a comparator employee is not fatal, by itself, to his case. Nobody, including Defendant, is saying that it is. Rather, Defendant argues, that is just one of a number of doors through which plaintiffs sometimes proceed to prove discrimination but which remain forcefully closed due to lack of evidence. Defendant's briefing presumably spent as much time as it did focusing on comparator employees because Plaintiff's other potential theories are even more obviously foreclosed. As explained above, this Court agrees with that assessment.[4]

---

here, nor there. As any experienced litigator knows, if you believe the other side has under-produced documents, your remedy is to file a motion to compel, after meeting and conferring in good faith. A party certainly cannot do *nothing* with a respect to a known deficient production and then ask this Court to make an inference that there may be more evidence out there that Plaintiff failed to diligently pursue. *See, e.g., Hayes ex rel. Est. of Hayes v. Invigorate Int'l, Inc.*, No. CIV.A.04-1577, 2005 WL 2491582, at *4 (E.D. Pa. Oct. 5, 2005) (granting summary judgment based on lack evidence despite reference to allegedly-deficient discovery response because the Plaintiff "should have filed a motion to compel within the applicable discovery period . . . ."); *see also, Hillmen, Inc. v. Lukoil N. Am., LLC*, No. CIV.A. 13-4239, 2015 WL 3947960, at *6, n. 11 (E.D. Pa. June 26, 2015) (Quiñones-Alejandro, J.) (granting summary judgment despite allegations of obstructionist discovery practice because "Plaintiff could have, and should have filed a motion to compel if discovery was being thwarted by Defendant" and that "Plaintiff did not do so and accordingly, cannot be heard to complain of such at the summary judgment stage.").

[4]      For this reason, too, Plaintiff's focus on *Bostock v. Clayton County* is analytically irrelevant. 590 US 644 (2020). In *Bostock*, the Court examined whether an employer may fire somebody for being homosexual or transgender. *Id.* at 649. The Court held that Title VII prohibited such an action because "[s]ex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." *Id.* at 652. Here, race does not play a "necessary and undisguisable role" in whether or not Defendant chooses to terminate someone's employment for using the "n-word."

The Court is further bewildered by Plaintiff's citation to EEOC guidance on hostile work environment claims to try and to establish Plaintiff's entitlement to say the "n-word" at work without consequences. (Dkt. #39-1 at 16). The cited provision discusses when an actionable hostile work environment arises. The fact that Plaintiff's actions may or may not have *themselves* created a hostile work environment for others, of course, does not mean that Defendant was not entitled to hold him to a higher standard, as long as that higher standard was not, itself, discriminatory. As discussed at length, there is no evidence it was.

Plaintiff also seems to argue that punishment for using the "n-word" tramples on a Constitutional right. But as will be explained more, *infra*, there is no Constitutional right to be had with respect to a private employer, unless some other facts mean the employer was effectively acting on behalf of the state. Plaintiff also seems to attempt to shoehorn in a disparate impact theory.[5] As will be explained, next, Plaintiff may not raise this theory of recovery for the first time at summary judgment.

> **b. Plaintiff did not plead a disparate impact claim and cannot raise one at this late stage. Even if he could, Plaintiff's proffered statistical evidence is plainly insufficient.**

The gist of a Title VII or PHRA claim under a disparate impact theory is an allegation that an employer has a policy which is facially neutral to protected classes,

---

[5]     This Court also believes Plaintiff may be arguing that termination for using the "n-word" is tantamount to termination for his membership in a protected class. As an initial matter, Plaintiff has no record evidence to support that and instead relies entirely on argument. But at any rate, because there is no evidence that such a policy was enforced discriminatorily against African American employees, that sort of challenge would be a better fit for a disparate impact claim, which, as will be explained next, cannot be sustained on the pleadings or the evidence.

but which impacts people in the plaintiff's protected class more than those without it. A claim for disparate impact can succeed even "without a deliberately discriminatory motive" where the result of that policy or practice is "functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988). The classic example of a policy litigated under this framework is where an employer requires candidates for a certain position to be capable of lifting a certain amount of weight. Such a requirement is likely to exclude more female candidates than male candidates. If a rejected female applicant can convincingly show that this policy impacts women more than men, the burden shifts to the defendant to show that the requirement is job related and consistent with a business necessity. *See Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (describing burden shifting). After that, the burden shifts back to the plaintiff one more time, who will still prevail if they can show the employer has refused to adopt a practice which achieves that same goal but has less of a disparate impact.[6] *Id.* (same).

It is well established law in this Circuit that a claim for disparate impact is its own cause of action and must be pleaded separately, or else it is waived. *See Spence v. City of Philadelphia*, 147 F. App'x 289, 291–92 (3d Cir. 2005); s*ee also Summy-Long v. Pennsylvania State Univ.*, 715 F. App'x 179, 182 (3d Cir. 2017); *Fulton-Walker v.*

---

[6]    This framework shows that a disparate impact claim is quite different than a disparate treatment claim proven by way of a comparator employee, discussed *supra*. Under the disparate treatment claim, the plaintiff still bears the burden of showing intentional discrimination by the employer, and the comparator employee outside the plaintiff's protected class is but one, rebuttable, piece of evidence that the employer had animus towards the plaintiff's protected class. On the other hand, a disparate impact claim entirely relieves the plaintiff of the requirement to show the employer held animus towards a protected class, but comes with the correspondingly heightened evidentiary showing discussed *infra*.

*Se. Pennsylvania Transportation Auth.*, No. CV 22-224, 2023 WL 1864865, at *1, n.1 (E.D. Pa. Feb. 9, 2023) (Bartle, J.). In *Spence*, the Third Circuit upheld the district court's grant of summary judgment on a disparate impact claim where such claim was not raised in the plaintiff's complaint but instead brought up for the first time after the close of discovery. *See Spence*, 147 F. App'x at 291. Dismissal was appropriate there because "the trial preparation needed to defend against a disparate impact claim is distinct from that necessary to defend against a disparate treatment claim." *Id.* at 292. Therefore, the plaintiff was precluded from raising the disparate impact claim at summary judgment, and summary judgment on that count in favor of defendant was proper. *Id.*

This Court has searchingly parsed Plaintiff's Complaint for anything which might even implicitly raise a disparate impact claim but finds nothing. There is no mention of any policy which was followed; to the contrary, Plaintiff expressly asserted in his Complaint that "there is no prohibition from using the 'n' word in the Defendant's employee handbook/manual" and that he "is unaware of any other company policy that prohibits an employee from using the 'n' word . . . ." (Complaint at ¶¶ 26-27). Plaintiff's Complaint not only fails to plead a cause of action for disparate treatment; it goes out of its way to exclude such a theory. If Plaintiff became aware of evidence for such a claim at a later date, he could have—and should have— amended the Complaint. *See Spence*, 147 F.App'x at 292 (citing *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir.1993)) (noting that a plaintiff who fails to plead disparate impact but finds evidence of it later "should have moved to amend

his pleadings during discovery upon determination that he had a disparate impact claim."). But he did not. Because Plaintiff has not separately pleaded his claim for disparate impact, he cannot shoehorn it in at this late stage, and summary judgment is appropriate.[7]

Even if this Court were to consider the merits of a disparate impact claim, Plaintiff would fall well short. To establish a *prima facie* case for a disparate impact claim, plaintiff must "(1) identify a specific employment policy or practice of the employer and (2) proffer evidence, typically statistical evidence, (3) of a kind and degree sufficient to show that the practice in question has caused an adverse impact, such as exclusion of applicants for jobs or promotions, (4) because of their membership in a protection group." *Kennedy v. City of Philadelphia*, 588 F. Supp. 3d 598, 606 (E.D. Pa. 2022) (Marston, J.) (cleaned up). "To establish a *prima facie* case of employment discrimination under the disparate impact theory, the plaintiff must demonstrate a causal connection between the challenged policy or regulation and a racially unequal result." *E.E.O.C. v. Greyhound Lines, Inc.*, 635 F.2d 188, 193 (3d Cir. 1980). "In other words, a policy does not have a disparate impact unless it is the cause of that impact." *Id.*

"Statistical disparities alone can raise an inference of causation, but only when those disparities are substantial and the statistical evidence is reliable." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 477 (3d Cir. 2011). The comparison

---

[7]    The failure to separately plead this count is yet another example of a worrying pattern which permeates Plaintiff's pleadings throughout this case. Employment discrimination law is its own creature with its own rules, requirements, and standards. Plaintiff's briefing suggests he is out over his skis, as he seems to misunderstand very basic employment law principles.

a plaintiff must be able to make is "between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market." *Id.* (cleaned up). Even statistics which show a "broad racial disparity" are not sufficient to survive summary judgment, without more. *See Foxworth v. Pennsylvania State Police,* 402 F. Supp. 2d 523, 534–35 (E.D. Pa. 2005) (Baylson, J.), *aff'd,* 228 F. App'x 151 (3d Cir. 2007). Without that additional evidence, the statistical analysis "is far too incomplete and insubstantial to raise such an inference of causation and therefore cannot defeat summary judgment." *Id.* These standards are important because "statistics are not irrefutable; they come in infinite variety and… their usefulness depends on all of the surrounding facts and circumstances." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 340 (1977).

Plaintiff's statistics do not come close to meeting this high standard. All Plaintiff has is the demographics of eighteen individual employees of Defendant. He does not provide or make argument regarding the demographics of the "qualified population in the relevant labor market" or even regarding the racial demographics of Defendant's entire workforce. *See N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 477.[8] The meager statistics he does bring to the Court further do not suggest a bias against African American employees. Rather, as explained *supra*, the only three employees from that data set who avoided termination were, themselves, African American.

---

[8]    Due to the nature of the putative disparate impact claim (i.e., a disciplinary policy which allegedly results in the termination of an existing employee rather than a hiring standard which might prevent members of a protected class from getting hired in the first place), it is likely true that Defendant's workforce at large would be the more probative denominator for statistical purposes than the population of the general labor market in the area. Plaintiff has provided this Court with neither.

Therefore, even if this Court were to consider Plaintiff's claim for discrimination under a disparate impact theory, he has failed to provide sufficient evidence, and judgment would be entered in Defendant's favor.

### c. Plaintiff's claim for retaliation fails, as he has no evidence he engaged in protected activity.

Plaintiff next brings a claim for Title VII and PHRA retaliation. As explained *supra*, such a claim requires Plaintiff to prove he engaged in protected activity. "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006*), as amended* (Sept. 13, 2006). Such an opposition must be more than general complaints of unfair treatment. *Webb v. Merck & Co.*, 450 F. Supp. 2d 582, 600 (E.D. Pa. 2006) (quoting *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 701–02 (3d Cir.1995)); *see also*, *Fields v. Am. Airlines, Inc.*, 696 F. Supp. 3d 66, 102 (E.D. Pa. 2023) (Marston, J.) (collecting cases).

Defendant contends that Plaintiff has no evidence of protected activity. Plaintiff attempts some creative responses, none of which is persuasive. First, Plaintiff points to a meeting between Plaintiff and Kevin Arena, Defendant's District Manager. Specifically, Plaintiff's briefing cites Exhibit 5 to Defendant's motion for summary judgment and claims it is evidence that Plaintiff "lodged a complaint about unfair and potentially discriminatory treatment . . . ." (Dkt. #39-1 at 20). This citation is, at best, misleading. The notes from the meeting only show that Plaintiff complained about an "[u]nfair environment" and expressing Plaintiff's view that his

co-worker, as a white employee, should not be offended by Plaintiff's use of the "n-word." (Dkt. #34-5 at p. 5). Nothing in the notes alludes to Plaintiff making a complaint about discrimination on the basis of his own protected class. Instead, this seems to be the very definition of a "general complaint[] of unfair treatment" which cannot support a claim for retaliation. *See Webb*, 450 F. Supp. 2d at 600. This is especially true as the meeting was held at Defendant's request, rather than in response to a complaint by Plaintiff.[9] *See, e.g.*, *Tannous v. Cabrini Univ.*, No. CV 23-1115, 2024 WL 1998499, at *4 (E.D. Pa. May 6, 2024) (McHugh, J.) (granting judgment on the pleadings and weighing against a retaliation claim the fact that the meetings which discipline was discussed occurred at the behest of the employer, and not the employee claiming participation in the meeting was a protected activity).

Plaintiff also claims that his retaliation claims should survive because Plaintiff was engaged in free speech activity. (Dkt. #39-1 at 20). As will be explained below, this argument would fail to convince anyone with even a rudimentary understanding of either Constitutional or employment law. Plaintiff has no Constitutional rights with respect to Defendant's actions in this case.

---

[9]     To be clear, Defendant's notes on this meeting need not have been the final word on what happened in that conversation. Where, as here, Defendant's argument for summary judgment effectively is that the plaintiff lacks of evidence to support his claims, the burden shifts to the plaintiff to bring the evidence he does have. *See National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992). Had Plaintiff recalled the meeting differently, he should have cited to a deposition excerpt or drafted and filed a sworn affidavit, which may well have created a genuine issue of material fact. But Plaintiff failed to attach a single exhibit to either his brief in opposition or to the Parties' Joint Statement of Undisputed Facts. According to his own briefing, therefore, Plaintiff's only record support for retaliation is Defendant's Exhibit 5. That is not enough to get the job done for Plaintiff.

Finally, Plaintiff attempts to make timing-based arguments. But timing is relevant in retaliation cases as causation evidence used to tie a protected activity to an adverse employment action. As there is no evidence of any protected activity, this Court need not consider the timeline, as suggested.

Because Plaintiff has no competent evidence that he engaged in any protected activity, this Court grants summary judgment in favor of Defendant with respect to Plaintiff's claims for retaliation under Title VII and the PHRA.

### d.  Plaintiff was terminated for a legitimate, non-discriminatory reason.

This Court will write only very briefly to observe that, for all the reasons explained above, even if Plaintiff did establish his *prima facie* case under Title VII and the PHRA, this Court would find that Defendant had a legitimate, non-discriminatory reason for firing Plaintiff. Violation of a neutrally applicable policy prohibiting the use of certain language deemed inappropriate the workplace is plainly a legitimate reason to fire an employee. Were it not, chaos would reign in the workplace, and Courts would have no choice but to be super-personnel departments, reviewing every firing decision and substituting their own qualitative judgments on appropriateness for that of businessowners. Such a stark judicial oversight would be unwelcome, unwise, and impermissible. *See Brewer*, 72 F.3d at 332. Much as Plaintiff wishes it were, it is not for this Court to referee who can say what and when. There is no evidence that this stated reason was pretextual cover for racial animus. The uncontroverted evidence, to the contrary, suggests that the vast majority of people

who do exactly what Plaintiff did are punished the exact same way he was, and that the only exceptions to that general trend are in the same protected class he is.

### e. Plaintiff has no free speech rights with respect to Defendant, and therefore his claim for wrongful termination fails.

Finally, Plaintiff attempts to make a tort claim under Pennsylvania common law for wrongful termination. Plaintiff makes these arguments both in opposition to Defendant's motion for summary judgment and in Plaintiff's own motion for summary judgment as to Count III. The gist of Plaintiff's argument is that his use of the "n-word" in the workplace is Constitutionally protected free speech, and that termination on that basis is therefore in violation of public policy.

As Defendant points out in its appropriately-terse opposition brief, it is black letter employment law that an employee has no right to free speech with respect to a private employer. The Third Circuit has observed that "the First Amendment applies only to public employers, and there is no doubt that government has a greater right to limit the speech of its employees than it does a private citizen." *Fogarty v. Boles*, 121 F.3d 886, 890 (3d Cir. 1997); *see also*, *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 276 (1st Cir. 2022) ("But, of course, because Whole Foods is a private employer, there is no First Amendment claim here."); *Shearin v. Bergen Reg'l Med. Ctr.*, No. 05-769, 2006 WL 489826, at *1 (D.N.J. Feb 23, 2006). Plaintiff probably should have noticed that both of his free speech in the workplace cases involve government employers and taken a hint from that fact. It is plainly apparent to even lay people

with basic understandings of civics that the First Amendment provides rights to citizens with respect to their government, but not with respect to private parties.[10]

Because Defendant was incapable of violating the Constitution under these circumstances, Plaintiff has no claim for wrongful termination based upon a Constitutional violation. As this is the only basis on which Plaintiff rests his wrongful termination claim,[11] Defendant is entitled to summary judgment on that count, and Plaintiff's motion for affirmative summary judgment is denied.[12]

## V.    Conclusion

If Plaintiff is frustrated by his termination, that frustration is understandable. By all accounts, he allowed himself to become irritated by an innocuous conversation

---

[10]    This Court acknowledges, of course, that in rare circumstances, a private employer can have obligations under the Constitution by virtue of its relationship with the state. *See M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 595 (E.D. Pa. 2019) (Pratter, J.) (describing public function test, close nexus test, symbiotic relationship test, and entwinement test). Plaintiff has made no argument that any of these categories apply, nor could this Court even begin to imagine how any of them might.

[11]    As mentioned above, in his Complaint, Plaintiff seems to suggest that allegedly violating the employee handbook constituted a breach of an employment agreement, which would justify a wrongful termination claim. It seems that Plaintiff has prudently abandoned that argument as the handbook in question unambiguously leaves in place the default of employment at-will and disclaims the existence of an employment contract.

[12]    Alongside their respective motions, the Parties filed, as required by the Local Rules and this Court's particular Guidelines, a Joint Certification that they met and conferred in good faith. This Court is perturbed that the Parties allege having had such a conference, but Plaintiff still proceeded forward with his claim for wrongful termination. Virtually any amount of substantive verbal discussion regarding the law as to that claim should have led any reasonable attorney to immediately abandon the free speech arguments that Plaintiff continued to advance at this stage. Such a gap could be explained by the Parties having treated this conference as a mere formality, Defendant having not adequately explained its position, Plaintiff obstinately refusing to confer with an open mind, or some combination of these. Were this case to proceed further on the other counts, this Court likely would have held a hearing to determine whether sanctions were appropriate. Parties before this Court are strongly advised that this Court expects substantive meetings between the Parties and expects appropriate actions undertaken swiftly by Parties who are alerted to a deficiency in their case. *See generally, Hunt v. Valley Forge Mil. Acad. & Coll.*, No. 2:25-CV-01323, 2025 WL 2524222, at *1 (E.D. Pa. Sept. 2, 2025) (Weilheimer, J.) (sanctioning Plaintiff's counsel who was alerted to deficiency on face of complaint during meet and confer with opposing counsel and then failed to take any action to amend complaint or otherwise disclaim frivolous legal theory).

with a co-worker with whom he was friendly, and used a word that, for him, may well be entirely in-bounds in many other social circumstances. Losing a job at which one was preforming well for one bad moment would doubtlessly feel harsh to anyone.

But Title VII and the PHRA do not exist to remedy harshness in the workplace. They are statutes limited in scope and designed only to ensure employers are not discriminating in their employment decisions. It is an absurdity to claim, as Plaintiff implicitly does, that Title VII and the PHRA effectively enshrine a right for any person to use any slur which applies to their own protected characteristic in the workplace. The results of such a rule would be impossible to apply. How is a manager to know whether the person who just used an anti-Semitic slur is Jewish, or who used a homophobic slur is homosexual? The questioning required to get to the bottom of those sorts of determinations would be sure to lead to more discrimination, not less.

Further, every individual member of each protected class rightly has their own levels of sensitivity, which may reasonably be offended by anyone—even a member of their same protected class—using such language. Plaintiff's proposed rule would put employers in an unenviable position. Plaintiff would have it that employers are prohibited by the aforementioned statutes from firing an employee who works there for use of a slur against their own protected class, and therefore also powerless to cure the hostile work environment the employee's usage of such language may well create for another, more sensitive, member of that protected class. Plaintiff's theory essentially guarantees that an employer has no choice but to violate Title VII as to one employee or the other in such a situation.

It should be patently obvious that this cannot be the case, and the statues should not be read to frustrate their own purposes or put employers in an unsolvable bind. Employers must be free to establish either formal or informal norms of acceptable workplace behavior which are enforceable uniformly and consistent with Title VII and the PHRA. That is what happened here. For all the reasons explained, Defendant's motion for summary judgment is granted in full, and all counts are dismissed with prejudice. Plaintiff's motion is denied. An appropriate order will follow.[13]

DATED: October 8, 2025                    BY THE COURT:

_____
GAIL WEILHEIMER            J

---

[13]      Both Parties filed *Daubert* motions at the time of their summary judgment motions. Those motions are both denied as moot.